# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**LUKUS KEELING, on his own behalf
and on behalf of all others similarly
situated,**

**Plaintiff,**

**v.**

**ESURANCE INSURANCE COMPANY[1],**

**Defendant.**                                    **No. 10-0835-DRH**

### MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

## I.  Introduction and Background

Pending before the Court is plaintiff's motion to remand (Doc. 34).  Defendant naturally opposes remand (Doc. 37).  Based on the following, the Court grants the motion to remand as it lacks jurisdiction over this matter.

On September 8, 2010, Keeling, on his own behalf and on behalf of all others similarly situated, filed a four count class action complaint against defendant in the Madison County, Illinois Circuit Court (Doc. 2-2).[2]  Plaintiff's complaint asserts

---

[1]The parties agreed to substitute Esurance Insurance Services, Inc. with Esurance Insurance Company as the proper defendant (Docs. 22 & 29).

[2]In his complaint, Keeling seeks certification of the following class:
All persons in the State of Illinois who purchased $20,000/$40,000 Underinsured Motorist Coverage offered by Esurance, its subsidiaries, agents, and affiliates, which use policies containing the language, or substantially similar language set forth herein.
Excluded from the Class are: (a) Defendant, its subsidiaries and affiliates, officers, directors, and employees: (b) the judge to whom this case is assigned and any member of the judge's immediate

violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, fraudulent misrepresentation and/or omission, negligent misrepresentation and unjust enrichment. Plaintiff challenges defendant's "practice of charging its customers for Underinsured Motorist Coverage that is wholly illusory, which is rendered void by the language of the policy itself, and which, upon information and belief, it has no intention of ever using as a basis for paying a claim." (Doc. 2-2, ¶ 1). Plaintiff maintains that defendant was selling underinsured motorist coverage to Illinois consumers that could not be triggered and therefore was worthless. Plaintiff "seeks damage on his own behalf and on behalf of the classes he represents, and further seeks injunctive relief compelling Defendant to change its policy language or otherwise remedy the situation, such that its customers are not purchasing coverage that Defendant has no intention of honoring." On October 22, 2010, defendant removed the case to this Court based on the Class Action Fairness Act ("CAFA") asserting minimal diversity existed and that the amount in controversy exceeded $5,000,000.00 (Doc. 2). In the Notice of Removal, defendant provided the following as to the amount in controversy:

a. Recovery of the premiums collected for the coverage at issue for the 52,469 policies totaled $613,894 (See. Doc. 2, ¶¶ 15-16);
b. Disgorgement of funds not paid on claims made against the policies. According to Defendant, "[t]he State Court Action therefore purports to seek up to $40,000 per claim for claims submitted under an insured's $20,000/$40,000 underinsured motorist coverage that were denied by Defendant in Illinois." (See. Doc. 2, ¶ 19).

---

family; (c) all persons who properly execute and file a timely request for exclusion from the Class.

c.  Plaintiffs seek punitive damages, attorney fees' and an order enjoining defendant from continuing to offer the underinsured motorist coverage.

On May 12, 2011, plaintiff filed its motion to remand (Doc. 34). Defendant responded on June 10, 2011 (Doc. 37). Plaintiff filed a reply on June 16, 2011 and a supplement on July 22, 2011 (Doc. 41). As the motion has been fully briefed, the Court turns to address the merits of the remand motion.

## II. <u>Legal Standard</u>

In general, an action filed in state court may be removed to federal court only if the action originally could have been brought in federal court. 28 U.S.C. § 1441(a). Courts are to interpret the removal statute narrowly. *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). Any doubts that persist regarding the propriety of removal are to be resolved in favor of the plaintiff's choice of forum in the state courts. *Id.* A party can file a motion to remand an action back to state court based on lack of subject matter jurisdiction. *See Chase v. Shop "N SaveWarehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997). Pursuant to 28 U.S.C. § 1447(c), after a case has been removed to federal court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Id.*

CAFA enacts special rules governing removal of class actions. Under CAFA, a defendant may remove a class action to federal district court so long as the case satisfies the statute's special diversity and procedural requirements. Under CAFA, district courts have original jurisdiction over any class action where the amount in

controversy exceeds the sum or value of $5,000,000 (exclusive of interest and costs) and where there is minimal or incomplete diversity of citizenship among the parties. 28 U.S.C. § 1332(d)(2).[3]

The Seventh Circuit has explained that CAFA did not alter the established legal rule that the proponent of federal jurisdiction bears the burden of establishing removal jurisdiction. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005); *Spivey v. Vertue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)(stating in action removed under CAFA that "[t]he removing party, as the proponent of federal jurisdiction bears the burden of describing how the controversy exceeds $5million"). The removing party must show that the amount in controversy requirement was satisfied at the time of removal. *See Tylka v. Gerber Products Co.*, 211 F.3d 445, 448 (7th Cir. 2000) (stating that "as the party seeking to invoke federal diversity jurisdiction, [the defendant] bears the burden of demonstrating that the complete diversity and amount in controversy requirements were met at the time of removal").

Plaintiff argues that remand of this action to state court is proper because since the removal of this action, it is clear from defendant's discovery responses that the amount in controversy does not exceed the $5,000,000. In its motion to remand, plaintiff maintains that after six months of discovery, defendant is still unclear about

---

[3]The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which -(A) any member of a class of plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state. 28 U.S.C. § 1332(d)(2).

the number of class members who have actually had claims denied on account of the policy language and, thus, defendant removed this case based on speculation and not facts. Defendant counters that plaintiff's motion to remand fails because it alleges only procedural defects and therefore is untimely and that plaintiff failed to demonstrate that it is legally impossible for the amount in controversy to exceed the jurisdictional amount. In its supplement, plaintiff contends that there is an absence of subject matter jurisdiction and that the calculation of damages defendant used to establish jurisdiction was based on "ostrich-like speculation." Specifically, that there are only five claims total of those who had claims denied on account of the policy language.

Here, defendant, in its response in opposition, did not address the amount in controversy or the number of claimants with any proof. Defendant used general terms/descriptions. Instead, defendant argues that plaintiff's motion to remand is untimely as plaintiff did not file the motion until after thirty days of the notice of removal. As stated previously in the case law, this is not procedural, it is jurisdictional and the issue of subject matter may be raised at this time.

Defendant has not provided evidence regarding either the number of claimants or the amount in controversy to establish that removal was proper under CAFA. In fact, plaintiff's supplement, which includes defendant's amended response to plaintiff's first set of interrogatories, indicates otherwise.[4] In particular defendant's

_____

[4]The response states: "Esurance objects to this Interrogatory as overbroad and unduly burdensome. Esurance further objects to this Interrogatory to the extent that it requests information from insurance companies other than Esurance. Esurance objects to the phrase

amended response number 9 reveals that there were only 5 claims made against the $20,000/$40,000 underinsured motorist Illinois policies from January 1, 2000 to December 18, 2010. In addition, Eric Madia testified the same as to the number of claims: "There have been five claims filed with esurance insurance company for policies with 20,000 40,000 UIM coverage in the state of Illinois and with those five claims no payments have been made." (Doc. 41-2; p. 6).[5] Clearly, defendant easily could have run this search through its database before it filed its Notice of Removal.[6] It certainly raises the question of why this search was not run before defendant filed its Notice of Removal. Had defendant run this search it would have known that there were only 5 claimants.

Furthermore, even with the possibility of punitive damages, attorneys' fees and injunctive relief factored in the amount in controversy, the Court finds that it would

---

"claims made against" as vague and confusing. Subject to the foregoing objections and General Objections stated above, from January 1, 2000 to December 18, 2010, four claims were submitted to Esurance relating to $20,000/$40,000 UIM coverage in the State of Illinois, not including the claim related to the above captioned action; no benefits were paid for a variety of reasons, including insured never pursuing benefits. (Doc. 41-1, pg. 11).

[5]Mr. Madia, the Director of Actuarial and Product Management at Esurance, signed the declarations/verifications contained in Esurance's Notice of Removal (Doc. 2-1); Defendant's Response to Plaintiff's First Set of Interrogatories (Doc. 34-1, p. 4); and Defendant's Amended Response to Plaintiff's First Set of Interrogatories (Doc. 41-1; p. 17)

[6]Madia testified the following as to the process of obtaining this information: "Q. Well with respect to this particular question how long would it take to formulate a inquiry to pull the number of claims that have been asserted. To pole the number? A. A few minutes. Q. And the same we with respect to the number of claims that have been paid out of those I guess the five that popped up? A. Yeah, just a few minutes." (Doc. 41-2, p.7). Madia further testified: "I have access to it and those that would need access to it would have access..." (Doc. 41-2, p.13).

be legally impossible for plaintiff to recover in excess of $5,000,000.[7]   Thus, defendant should have known at the time of removal it was legally impossible for the amount in controversy to be satisfied in order to confer subject matter jurisdiction under CAFA.

### III.  Conclusion

Accordingly, the Court **GRANTS** plaintiff's motion to remand (Doc. 37).  As this Court lacks subject matter jurisdiction over plaintiff's claims, the Court **REMANDS** this matter to the Madison County, Illinois Circuit Court.  Further, the Court **DENIES as moot** defendant's motion to dismiss (Doc. 12 ).

**IT IS SO ORDERED.**

Signed this 25th day of July, 2011.

Digitally signed by David R. Herndon
Date: 2011.07.25 11:40:43 -05'00'

**Chief Judge**
**United States District Court**

---

[7]The following figures are the Court's attempt to calculate the amount in controversy. Damages are $813,894 ($613,894 in liquidated damages and $200,000 for the value of the claims(using plaintiff's generous value )).  An estimate of attorneys' fees would be around $244,168 (30% of the damages).  An estimate of the punitive damages would be around $4,186,106 – almost 84% of the amount in controversy ($5,000,000 - $813,894 = $4,186,106).  This would make the bulk of the amount in controversy punitive damages.  Such an award of punitive damages cannot be the sole basis for jurisdiction.  *See Anthony v. Security Pacific Financial Services, Inc.*, 75 F.3d 311, 17-18 (7th Cir. 1996).  The Court agrees with plaintiff that the injunctive relief would be *de minimus* to change the policy language as defendant offers no estimates regarding the cost of changing its policy language and that there are other insurance policies that offer underinsured motorist coverage in Illinois that provide coverage.