IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**LUKUS KEELING, on his own behalf
and on behalf of all others similarly
situated,**

**Plaintiff,**

v.

**ESURANCE INSURANCE COMPANY[1],**

**Defendant.**           **No. 10-0835-DRH**

**MEMORANDUM and ORDER**

**HERNDON, Chief Judge:**

### I. Introduction and Background

Pending before the Court is defendant's motion to dismiss (Doc. 12). Defendant contends that plaintiff's complaint rests entirely on the false allegation that the undersigned motorist coverage provided by defendant was illusory; that the allegations involving rates filed with, and regulations promulgated by, the Illinois Department of Insurance are barred by the filed rate doctrine or referred to the Illinois Department of Insurance under the primary jurisdiction doctrine; and that the claims fail as a matter of law. Plaintiff opposes the motion (Doc. 21). Based on the following, the Court grants in part and denies in part the motion to dismiss.

On September 8, 2010, Lukus Keeling, on his own behalf and on behalf of all

---

[1]The parties agreed to substitute Esurance Insurance Services, Inc. with Esurance Insurance Company as the proper defendant (Docs. 22 & 29).

others similarly situated, filed a four-count class action complaint against defendant in the Madison County, Illinois Circuit Court (Doc. 2-2).[2] Count I is a state law claim for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 510/2 ("ICFA"); Count II is a state law claim for fraudulent misrepresentation and/or omission; Count III is a state law claim for negligent misrepresentation and Count IV is a state law claim for unjust enrichment.[3] Plaintiff contends that Esurance committed fraud by charging for uninsured or underinsured motorist coverage that is worthless in light of the policy's restrictions. Specifically, plaintiff challenges defendant's "practice of charging its customers for Underinsured Motorist Coverage that is wholly illusory, which is rendered void by the language of the policy itself, and which, upon information and belief, it has no intention of ever using as a basis for paying a claim." (Doc. 2-2, ¶ 1). Plaintiff "seeks damage on his own behalf and on behalf of the classes he represents, and further seeks injunctive relief compelling defendant to change its policy language or otherwise remedy the situation, such that its customers are not purchasing coverage that Defendant has no intention of honoring."

---

[2]In his complaint, Keeling seeks to certification of the following class:
All persons in the State of Illinois who purchased $20,000/$40,000 Underinsured Motorist Coverage offered by Esurance, its subsidiaries, agents, and affiliates, which use policies containing the language, or substantially similar language set forth herein.
Excluded from the Class are: (a) Defendant, its subsidiaries and affiliates, officers, directors, and employees: (b) the judge to whom this case is assigned and any member of the judge's immediate family; (c) all persons who properly execute and file a timely request for exclusion from the Class.

[3] In his response, plaintiff consents to the dismissal of Count III, negligent misrepresentation. Thus, the Court dismisses Count III.

## II. <u>Motion to Dismiss</u>

A 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge 7*, 570 F.3d 811, 820 (7th Cir.), *cert. denied*, ––– U.S. –––, 130 S.Ct. 749, 175 L.Ed.2d 517 (2009). The United States Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), that Rule 12(b)(6) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face."

In making this assessment, the district court accepts as true all well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *See* Rujawitz v. Martin, 561 F.3d 685, 688 (7th Cir. 2009); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007), *cert. denied*, 553 U.S. 1032, 128 S.Ct. 2431, 171 L.Ed.2d 230 (2008).

Even though *Twombly* (and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) retooled federal pleading standards, notice pleading remains all that is required in a complaint. "A plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.' " *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). The level of detail the complaint must furnish can differ depending on the type of case before the Court. So for instance, a complaint involving complex litigation (antitrust or RICO claims) may need a "fuller set of factual

allegations ... to show that relief is plausible." *Tamayo,* 526 F.3d at 1083, *citing Limestone Dev. Corp. v. Village of Lemont, Illinois,* 520 F.3d 797, 803–04 (7th Cir. 2008).

The Seventh Circuit Court of Appeals has offered further direction on what (post- *Twombly & Iqbal* ) a complaint must do to withstand dismissal for failure to state a claim. In *Pugh v. Tribune Co.,* 521 F.3d 686, 699 (7th Cir. 2008), the Court reiterated: "surviving a Rule 12(b)(6) motion requires more than labels and conclusions;" the allegations must "raise a right to relief above the speculative level." Similarly, the Court remarked in *Swanson v. Citibank, N.A.,* 614 F.3d 400, 403 (7th Cir. 2010): "It is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law."

Judge Posner explained that *Twombly* and *Iqbal:*

require that a complaint be dismissed if the allegations do not state a plausible claim. The Court explained in *Iqbal* that "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. This is a little unclear because plausibility, probability, and possibility overlap....

But one sees more or less what the Court was driving at: the fact that the allegations undergirding a plaintiffs claim could be true is no longer enough to save it. .... [T]he complaint taken as a whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a probability as such terms as "preponderance of the evidence" connote.... After *Twombly* and *Iqbal* a plaintiff to survive dismissal "must plead some facts that suggest a right to relief that is beyond the 'speculative level.' " *In re marchFIRST Inc.,* 589 F.3d 901, 905 (7th Cir. 2009).

*Atkins v. City of Chicago,* 631 F.3d 823, 831–32 (7th Cir. 2011) (emphasis added). *See also Smith v. Medical Benefit Administrators Group, Inc.,* 639 F.3d 277, 281 2011 (Plaintiff's claim "must be plausible on its face," that is, "The complaint must establish a nonnegligible probability that the claim is valid...."). With these principles in mind, the Court turns to plaintiff's complaint.

> Plaintiff alleges:
>
> "All drivers in the state of Illinois are required to be covered by a minimal level of automobile insurance when operating a vehicle on Illinois' roads. At all relevant times herein stated, the minimum limit for bodily injury liability specified by Illinois' financial responsibility law, codified at 625 ILCS 5/7-203 was $20,000 per person and $40,000 per accident."

(Doc. 2-2, p. 2). Plaintiff also alleges that "[d]efendant offers Underinsured Motorist Coverage in various amounts, including coverage in the amount of $20,000 per person and $40,000 per accident ('$20,000/$40,000 Underinsured Motorist Coverage'). *Id.* Further, the complaint alleges that the policies sold by Esurance contained the following definition of Underinsured Motorist Vehicle which triggers payment under the Underinsured Motorist Coverage:

> "'Underinsured motor vehicle' means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.
> However, 'underinsured motor vehicle' does not include any vehicle or equipment:
> 1.    To which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the minimum limit for bodily injury liability specified by the financial responsibility law of Illinois."

*Id.* at p. 3. Plaintiff avers:

> "Because the financial responsibility law of Illinois sets the minimum limit for bodily injury liability at $20,000 per person and $40,000 per accident, an Esurance customer with $20,000/$40,000 Underinsured Motorist Coverage would necessarily be excluded from making a claim under the policy. Another Illinois driver would necessarily have to have at least the same $20,000/$40,000 coverage, such that provision would not be triggered, and a driver from any other state with lesser financial responsibility requirements would trigger the exclusionary language of the policy set forth above."

*Id.* Plaintiff also avers that defendant continues to sell this insurance and charges its customers for coverage that is illusory. *Id.*

**"Coverage is not Illusory"**

Defendant argues that plaintiff's complaint is barred as the coverage is not illusory in that there are scenarios in which permit recovery under the coverage. Specifically, defendant maintains that under *Cummins v. Country Mut. Ins. Co.*, 687 N.E.2d 1021, 1027 (Ill. 1997), plaintiff would be entitled to recover under his $20,000/$40,000 Uninsured/Underinsured Motorist Coverage if he suffers injuries in excess of an at-fault driver's bodily injury coverage, but receives less then his underinsured policy limits. Thus, defendant contends that under *Cummins* any underinsured motorist coverage claim submitted to defendant must be evaluated by comparing the amount the insured recovered from that at-fault driver to the insured's underinsured policy limit, not by comparing the at-fault driver's bodily injury policy limit to the underinsured limit. Plaintiff maintains that the holding in *Cummins* has been gutted by subsequent decisions, is not applicable to this case and was decided upon an earlier version of 215 ILCS 5/143a-2 that has since been

amended.[4]

The Court agrees with plaintiff and finds that defendant's argument misses the mark. In *Thurman v. Grinell Mut Reinsuranec Co.*, 764 N.E.2d 130, 136 (Ill. App. Ct. 2002), the Fifth District Illinois Appellate Court noted that *Cummins* was decided without the added language in the statute and found the following:

> "[W]e believe that the amendment to the statute clearly indicates the General Assembly's intent to restrict underinsured-motorist coverage carriers from providing benefits where the *limits* of the bodily-injury liability insurance of the owner or operator of the underinsured motor vehicle exceed the *limits* of the underinsured motor coverage."

The appellate court further held: "we believe it is clear that where the *limits* of the underinsured-motorist coverage do not exceed the *limits* of the bodily injury liability insurance of the owner or operator of the underinsured motor vehicle, there is no amount payable by the underinsured-motorist-coverage carrier." *Id*. at 137. Based on the current law and the allegations contained in plaintiff's complaint, the Court

---

[4]At the time *Cummins* was decided, 215 ILCS 5/143a-2(4) read:
"For the purpose of this Code the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle."

215 ILCS 5/143a-2(4) (West 1992). In 1997, the following language was added to the statute: "However, the maximum amount payable by the underinsured motorist coverage carrier shall not exceed the amount by which the limits of the underinsured mortorist coverage exceeds the limits of the bodily injury liability insurance of the owner or operator of the underinsured motor vehicle." In 2004, this language was moved to 215 ILCS 5/143a-2(7) (West 2004).

finds that plaintiff has sufficiently alleged a scheme to provide illusory coverage.

**Filed Rate Doctrine and Primary Jurisdiction**

Next, defendant argues that plaintiff's claims are barred by the filed rate doctrine and/or primary jurisdiction. Defendant contends that it properly and timely filed its rates with the Illinois Department of Insurance. Thus, if the Court were to evaluate damages relating to the alleged fraud in plaintiff's complaint, it would infringe upon the authority of the Illinois Department of Insurance, require an improper determination of the reasonableness of defendant's uninsured/underinsured motorist coverage rate and that could lead to discriminatory pricing for Esurance insureds. Further, defendants argue that under the doctrine of primary jurisdiction, plaintiff's claims are barred as the Director of Insurance has primary jurisdiction. Plaintiff responds that he is not challenging the rates charged by defendants. Rather, he is challenging defendant's practice of offering coverage and collecting premiums for insurance that, by its terms, cannot ever be triggered. The Court agrees with plaintiff.

In accordance with the Illinois Administrative Code, which requires that insurance rates be filed with the Illinois Department of Insurance ("DOI")Ill. Admin. Code tit. 50, §§ 754.10, 754.40, defendant contends that, consequently, all of plaintiff's claims against it are barred by the filed rate doctrine, which forbids courts from invalidating or modifying rates that have been filed with regulatory agencies. *Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 402 (7th Cir. 2000); *Arsberry v. Illinois*, 244 F.3d 558, 562 (7th Cir. 2001). Underlying the filed rate doctrine is the

principle that "any 'filed rate'-that is, one approved by the governing regulatory agency-is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland Ltd. v. NYNEX Corp.,* 27 F.3d 17, 18-19 (2nd Cir. 1994). The filed rate doctrine serves two interests: (1) the prevention of price discrimination among rate payers, and (2) the preservation of the exclusive role of regulatory agencies to determine the reasonableness of rates, in light of courts' limited ability to do so. *See Fax Telecommunications, Inc. v. A T & T,* 138 F.3d 479, 489 (2nd Cir. 1998); *Arsberry,* 244 F.3d at 562 (the filed rate doctrine is based both on "historical antipathy to rate setting by courts" and on "a policy of forbidding price discrimination by public utilities and common carriers"); *Goldwasser,* 222 F.3d at 402 (filed rate doctrine is premised on the fact that "the courts' ability to determine the reasonableness of rates is limited; [and] that awarding damages to plaintiffs while leaving less litigious customers paying the filed rates would be discriminatory"). As noted above, and consistent with the doctrine's second purpose, the filed rate doctrine bars courts from altering filed rates. By extension, the filed rate doctrine also prohibits a court from awarding a plaintiff damages based on the difference between a filed rate and an allegedly lawful rate. The prohibition on such damages serves both of the doctrine's purposes. An award of such damages to the plaintiff would result in discrimination among customers, because it would effectively change the rate paid by the plaintiff to one below the filed rate paid by other customers. *Hill v. BellSouth Telecommunications, Inc.,* 364 F.3d 1308, 1316 (11th Cir. 2004); *Bryan v. BellSouth Communications, Inc.,* 377 F.3d 424, 429 (4th Cir. 2004).

Similarly, authorizing a court to award damages would "require the court to determine the lawful tariff," which "is not regarded as a proper judicial function," but rather as the exclusive role of the regulatory body. *Arsberry,* 244 F.3d at 562.

Further, "'Primary jurisdiction' applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. Western Pacific Ry.*, 352 U.S. 59, 63-64 (1956); *Illinois Bell Telephone Co., Inc. V. Global Naps Illinois, Inc.*, 551 F.3d 587, 594 (7th Cir. 2008). Primary jurisdiction doctrine,"allows a court to refer an issue to an agency that knows more about the issue, even if the agency hasn't been given exclusive jurisdiction to decide it." *Id.* at 563; *see also Star Net, Inc. v. Global Naps, Inc.,* 355 F.3d 634, 639 (7th Cir. 2004). The Court, in other words, is asked to abstain from hearing the matter and refer to agency expertise. *Arsberry,* 244 F.3d at 563-64. The doctrine is not to be reflexively applied; rather, it "envisages a fact specific inquiry peculiar to the facts of each case." *Gross Common Carrier, Inc. v. Baxter Healthcare Corp.,* 51 F.3d 703 (7th Cir. 1995) (citing *United States v. Western Pac. R.R. Co.,* 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956)). Where the issue in question is a matter of law, however, agency referral under the primary jurisdiction doctrine is generally unnecessary. *See Baltimore & Ohio Chicago Terminal R.R. Co. v. Wisconsin Cent. Ltd.,* 154 F.3d 404, 411 (7th Cir. 1998); *Gross Common Carrier,*

51 F.3d at 706 n. 3. A number of factors are considered by courts in deciding whether to invoke the doctrine, including the need for consistency and uniformity, the extent to which a matter is beyond a court's expertise, and judicial economy. *Ryan v. Chemlawn Corp.,* 935 F.2d 129, 131 (7th Cir. 1991). "There is no fixed formula for the invocation of the doctrine of primary jurisdiction;" rather, " 'the decision whether to apply it depends upon a case by case determination." ' *Id.* (citation omitted).

Here, the Court finds that neither doctrine is applicable to the facts of this case. Plaintiff's claims are based upon state law and do not challenge defendant's rates. Rather, plaintiff's complaint contains claims of deception and fraud and seek damages and equitable relief on the basis that the insurance coverage was a sham. Thus, plaintiff's claims challenge defendant's alleged deception, not the amount charged for the underinsured coverage and do not seek to change the rates. The Court here is not faced with a complex question of whether the amounts of defendant's rates were reasonable. Instead, the Court is confronted with a more familiar issue-namely, whether defendant's conduct was deceptive and fraudulent in violation of several statutes. The issues these claims present are with the realm of the Court's experience, and the Court is aware of no extenuating circumstances that require referral. *See, e.g., Nadler v. Allegheny Airlines, Inc.,* 426 U.S. 290, 305 (1976)("The standards to be applied in an action for fraudulent misrepresentation are withing the conventional competence of the courts."). As such, the Court finds that plaintiff's cause of action is neither barred by the filed rate doctrine nor the

primary jurisdiction doctrine.

**Count I - Illinois Consumer Fraud and Deceptive Business Practices Act**

Defendant argues that Count I should be dismissed because plaintiff failed to plead a deceptive act or practice in that he never submitted an underinsured motorist claim to defendant or had the claim denied and that plaintiff failed to plead damages. Defendant also maintain that the failure to disclose the requirements of the statute cannot form the basis of an ICFA claim and that breach of contract allegations cannot form the basis of an ICFA claim.

The elements of a claim under ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce. *Robinson*, 266 Ill.Dec. 879, 775 N.E.2d at 960; *see also Rickher v. Home Depot, Inc.,* 535 F.3d 661, 665 (7th Cir. 2008).

The ICFA is a "regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices. "*Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 960 (Ill. 2002). The statute provides redress not only for deceptive business practices, but also for business practices that, while not deceptive, are unfair. *See ibid.* To determine whether a business practice is unfair, the court considers "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes

substantial injury to consumers." *Id.* at 961 (citing *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n. 5, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972)). "All three criteria do not need to be satisfied to support a finding of unfairness.  A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Ibid.*; *see also Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008).  Unfairness under the ICFA "depends on a case-by-case analysis." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). "Because neither fraud nor mistake is an element of unfair conduct under [the ICFA], a cause of action for unfair practices under the [ICFA] need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City Metal,* 536 F.3d at 670.

The Court finds that plaintiff has set forth the necessary elements for an ICFA claim.  In this Count, plaintiff alleges that defendant "offered and charged its customers for worthless, illusory coverage and used that language as justification to deny valid claims, ... with the intent that others rely upon the concealment, suppression or omission of such material fact," (Doc. 2-2, p. 6).  Further, plaintiff alleges "[p]laintiff and the class have been damaged in that they have paid Esurance for illusory coverage that Defendant had no intention of honoring." (Doc. 2-2, p.7). These allegations set forth the elements: the deceptive act, the selling of the worthless insurance coverage; defendant's intent for others to rely on its conduct and plaintiff's reliance on defendant's conduct that caused damage.  Clearly, these allegations are sufficient to place defendant on notice as to what his ICFA claim is about and to

withstand the motion to dismiss.

Further, the Court rejects defendant's argument that plaintiff's claim is based on its failure to disclose the requirements of the statute and that this is a breach of contract. A look at the complaint reveals that plaintiff's allegations in this count do not rely upon the theory that Esurance failed to disclose the minimum coverage requirements of the Illinois financial responsibility law. In fact, plaintiff's IFCA claim does not include such an allegation. Instead, it appears from the allegations that the claim is based upon the inclusion of language which purports to provide coverage and the inclusion of language that immediately excludes that coverage. Likewise, the Court does not find that the ICFA claim alleges a breach of contract. Thus, the Court denies the motion as to Count I, the IFCA claim.

**Count II - Fraudulent Misrepresentation and/or Omission**

"The elements of a claim for fraudulent misrepresentation, also referred to as common law fraud, are: (1) a false statement or omission of material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance." *Weidner v. Karlin,* 932 N.E.2d 602, 605 (Ill. App. Ct. 2010) (citing *Bd. of Educ. of City of Chicago v. A, C & S, Inc.,*, 546 N.E.2d 580, 591 (Ill. 1989)). "A successful common law fraud complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the

misrepresentations and to whom they were made." *Connick v. Suzuki Motor Co.,* 675 N.E.2d 584, 591 (Ill. 1996). Moreover, the plaintiff's reliance on the fraud must be reasonable. *Minch v. George,* 917 N.E.2d 1169, 1178 (Ill. App. Ct. 2009).

First, defendant argues that this claims fails because plaintiff failed to adequately plead with any specificity a false statement of material fact. Plaintiff alleges "by offering $20,000/$40,000 Underinsured Motorist Coverage to Illinois customers, when it knew that said coverage was worthless and that it would not honor claims made pursuant to any such coverage, Defendant made false statements of fact which were material to Plaintiff and the class." (Doc. 2-2, p. 7). As to the argument that plaintiff failed to plead with any specificity false statements, the Court incorporates its reasoning denying the motion to dismiss the ICFA claim here. These allegations sufficiently advise defendant of the nature of the fraudulent omission claim.

Further, defendant argues that because there is no special or fiduciary relationship between the parties, this claim must be dismissed. The Court notes that in addition to the elements listed above, "it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak" in order to prove fraudulent omission. *Weidner*, 932 N.E.2d at 605. While a fiduciary duty may arise as a matter of law from the existence of a particular relationship ( *In re Estate of Long,* 726 N.E.2d 187, 190–91 (Ill. App. Ct. 2000)), it is well settled that no fiduciary relationship exists between an insurer and an insured as a matter of law. *Nielsen v. United Services Automobile Ass'n*, 244 , 612 N.E.2d 526, 530 (Ill. App. Ct. 1993).

However, such a duty may arise as the result of special circumstances of the parties' relationship, where one party places trust and confidence in another, thereby placing the latter party in a position of influence and superiority over the former. *Connick*, 675 N.E.2d at 593; *In re Estate of Long*, 726 N.E.2d at 190–91 (court found fiduciary relationship between lessor and lessee where lessee was named co-executor of lessor's estate and was given power to make health care decisions for lessor). This position of superiority may arise by reason of friendship, agency, or experience. *Connick,* 675 N.E.2d at 593. When the relationship between the parties is not one that gives rise to a fiduciary relationship as a matter of law, the party asserting the existence of the relationship has the burden of pleading and proving such by clear and convincing evidence. *Schrager v. North Community Bank,*767 N.E.2d 376, 385 (Ill. App. Ct. 2002).

    Plaintiff acknowledges that he does not assert in his complaint that defendant stands as fiduciary to him, but plaintiff asserts that he does allege that defendant was aware that coverage could not be triggered, that defendant sold the coverage despite this knowledge and that defendant was aware that consumers would not appreciate this.  Plaintiff contends that without the benefit of a factual record with respect to defendant's knowledge with respect to its coverage and its claims handling practices when claims are submitted it would be inappropriate to determine that no duty to disclose exists at this time.  Based on these allegations, the Court finds that there is a dispute of fact as to whether Esurance has/had a duty to disclose this information.  Clearly, this issue should be addressed during the summary judgment stage.  Thus,

the Court denies the motion to dismiss Count II, fraudulent omission.

**Count IV - Unjust Enrichment**

To state a claim for unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989); *see also M & O Insulation Co. v. Harris Bank Naperville*, 783 N.E.2d 635, 639 (Ill. App. 2002) (to prevail on a claim of unjust enrichment "a plaintiff must present evidence that the defendant unjustly retained a benefit to plaintiff's detriment and that the defendant's retention of that benefit violated fundamental principles of justice, equity and good conscience.").

Although the allegations of plaintiff's complaint clearly state a claim for unjust enrichment, defendant argues that plaintiff is not entitled to bring an unjust enrichment claim in lieu of a breach of contract claim. Where the subject matter of a suit is governed by contract, it is axiomatic that there can be no recovery on the basis of unjust enrichment. *See Murray v. Abt Assocs., Inc.*, 18 F.3d 1376, 1379 (7th Cir. 1994)("Illinois does not permit recovery on a theory of quasi-contract when a real contract governs the parties' relations."); *Borowski v. DePuy, Inc.*, 850 F.2d 297, 301 (7th Cir. 1988)(under Illinois law, "[i]f the parties enter into an agreement, they choose to be bound by its terms.... [A]n action sounding in quasi-contract will not lie."). However, at the pleading stage under the federal procedural rules, Keeling is entitled to assert a claim in quasi-contract, regardless of the existence of an

express contract.  *See* Fed.R.Civ.P. 8(e)(2) (authorizing a party to "set forth two or more statements of a claim or defense alternately or hypothetically" and "to state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.").  Hence, the Court denies defendant's motion to dismiss Count IV, the unjust enrichment claim.

## V. Conclusion

Accordingly, the Court **GRANTS in part** and **DENIES in part** defendant's motion to dismiss (Doc. 12).  The Court **GRANTS** the motion as to Count III, the negligent misrepresentation claim, and **DISMISSES** Count III of plaintiff's complaint.  The Court **DENIES** the motion as to the remaining claims.

**IT IS SO ORDERED.**

Signed this 1st day of March, 2012.

David R. Herndon
2012.03.01
15:02:15 -06'00'

**Chief Judge**
**United States District Court**